## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DERRICK DIRTON              *

Plaintiff                  *

v                            *          Civil Action No. RDB-13-2209

SGT. SAWYER, et al.         *

Defendants              *
                           ***

### MEMORANDUM OPINION

Self-represented Plaintiff Derrick Dirton filed the above-captioned Complaint pursuant to 42 U.S.C. §1983. Defendants, by their attorney, move to dismiss or, in the alternative, for summary judgment. ECF 18. Plaintiff opposes the motion. ECF 22 and 23. After review of the pleadings, exhibits, and applicable law, the Court determines that a hearing is unwarranted. Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment (ECF 18), will be GRANTED and judgment will be ENTERED in favor of the Defendants.

### Background

Derrick Dirton ("Dirton") is a prisoner incarcerated at North Branch Correctional Institution (NBCI). He alleges that on April 10, 2013, at 1:15 p.m. when he was returning from Western Correctional Institution (WCI) where he had gone on "pass," he was assaulted by Sgt. Sawyer, Officer Mallow, Officer Durst, Officer Broadwater, and two unknown officers. ECF 1 at p. 5. Specifically, Dirton claims he entered his assigned cell at NBCI in full three-point restraints and, once inside, the officers who were escorting him came into the cell "attacking" him. He states the officers began punching him in the face and abdomen, causing hm to fall to the floor face first. Dirton claims the officers continued their assault on him pummeling his

head, back, and face and kicking him repeatedly.  Dirton states the assault caused him to have a seizure.  Dirton adds that he has epilepsy, takes prescribed medication for seizures, and wears a seizure helmet.  *Id.*

After Dirton had a seizure he claims he was dragged out of his cell into the corridor and into the "ER."  Dirton alleges he was denied medical treatment and instead was put into a holding cell, but later put into the shower because he had urinated on himself during his seizure.  Following the shower, Dirton claims he was placed back into his cell.  ECF 1 at p. 5.

Dirton further alleges that he attempted to file an administrative remedy (ARP) concerning the assault, but Sgt. Sawyer destroyed the form saying that Dirton would "never get to report this."  ECF 1 at p. 5.  Dirton recalls that the officers involved referred to his assault as "vicious."  *Id.* at p. 6.  He further claims that Officers Durst, Sawyer, and Mallow stated that now that Dirton had been beaten he would stop complaining so much.  Dirton claims the officers then laughed and walked away.  *Id.*

In his Amended Complaint Dirton adds a claim against Officer Bittinger whom he claims retaliated against him because of the instant case.  ECF 6.  Specifically he claims Bittinger deprived him of his medically prescribed diet on August 30 and September 8, 2013.  He states that Bittinger was accompanied by Sawyer during lunch on August 30, 2013, and did not open his food slot.  Additionally, he claims Bittinger did not follow medical orders to cuff him only in the front during his "shower time."  *Id.*  On September 8, 2013, Dirton claims Bittinger deprived him of his lunch at the behest of Sawyer who accompanied Bittinger during delivery of meals. *Id*

In correspondence[1] filed with the Court, Dirton further claims that on August 18, 2013, at 10:00 a.m., Officer Durst refused to open his food slot and deprived him of his medically prescribed diet. He states Durst told him to "write the courts and tell them." ECF 9. In the same correspondence, Dirton claims that on August 22, 2013, Mallow refused to follow a medical order for front cuffing when escorting him to the shower. He alleges Mallow also told him to write to the courts that Mallow had not followed the front cuffing order. *Id.* Dirton adds that on August 30, 2013, Bittinger denied Dirton a shower by interrupting Dirton's explanation to Officer Broadwater regarding the front-cuffing order and handing Dirton paperwork stating he had refused his shower. *Id.* He further claims that on September 6, 2013, Bittinger again refused to follow front-cuffing orders and told Dirton, "if you keep telling me you front cuffs (sic) I am going [to] do you like I done on August 30, 2013." *Id.* at p. 2.

### Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

---

[1]  Additional correspondence filed by Dirton alleges further acts of retaliation similar in nature. ECF 13. Because the correspondence raises new claims unrelated to the instant case, those claims will not be addressed here. Plaintiff remains free to file a separate action to pursue those claims.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (U.S. 2009); *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

**Analysis**

Excessive Use of Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 599 U.S. 34 (2010).

The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 34.

Defendants deny all allegations made by Dirton. ECF 18. They further assert that on April 10, 2013, Dirton was seen in the medical department at which time his vital signs were within normal limits and no injuries were noted.[2] The encounter form notes the exam occurred as a result of a use of force without pepper spray, but on the following day it was noted that the encounter was a controlled escort, not a use of force. *Id.* at Ex. 8, pp. 1 – 4.

Dirton reported to medical staff on April 14, 2013, that his wrist was injured on April 10, 2013, when he was handcuffed. Upon exam, no deformities, bruising, or swelling was noted and the range of motion of Dirton's wrist was within normal limits. *Id.* at pp. 5 – 7 and p. 127. In addition, Dirton reported a pain in his side which was assessed as a possible strain and a small crack in Dirton's seizure helmet was noted. *Id.* at pp. 8 and 126.

On April 16, 2013, Dirton requested an MRI due to his recurrent seizures and also requested a new seizure helmet, because it was damaged the prior week during an incident of excessive use of force by correctional officers. *Id.* at Ex. 8 at pp. 9 – 10. Although Nurse Cortez noted the helmet appeared to be functional, she reported Dirton's request for a new helmet to supervisory medical staff. *Id.* The remaining medical records submitted are not consistent with Dirton's account of the alleged assault against him.

In his Response in Opposition, Dirton offers no evidence to refute Defendants' denial that an assault occurred as alleged in the Complaint. ECF 22 and 23. Additionally, the medical evidence submitted is inconsistent with Dirton's description of the assault. *See* ECF 18 at Ex. 8,

---

[2] There are no records for Dirton's housing unit indicating an incident occurred involving Dirton on April 10, 2013. ECF 18 at Ex. 9, pp. 5 – 11.

p. 5 (April 10, 2013 report; "No injuries noted."). Accordingly, Defendants are entitled to summary judgment in their favor on this claim.

### Retaliation and Harassment

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim); with *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)) ("'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'"); *see also Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACL U of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993).

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996), quoting *Adams*

*v. Rice*, 40 F.3d at 74. Plaintiff "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Dirton claims the acts of retaliation consisted of officers refusing to honor front cuffing orders and to provide him with medically prescribed meals. Defendants provide records in support of their motion establishing that Dirton received meals on the dates he alleges he was denied food and that he refused a shower. ECF 18 at Ex. 9, pp. 21 – 27; Ex. 12 – 15. Additionally, a prison-wide policy was established on August 12, 2013, in response to inmate assaults on staff requiring all inmates to be handcuffed behind their backs with some exceptions. *Id.* at Ex. 14, p. 7. Discretion was given to escorting officers to utilize long-chained handcuffs for inmates who experienced difficulty with putting their hands behind their back and a waiver of the back-cuffing requirement was provided for "inmates who have had medical procedures on their arms or shoulder in the past three months." *Id.* Thus, it appears there was a legitimate, non-retaliatory reason for requiring Dirton to be cuffed behind his back.

In the prison context, if the action taken did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals, a prima facie case of retaliation is established. *See Rizzo v. Dawson*, 778 F.2d 527, 532 & n. 4 (9th Cir. 1985). The preservation of internal order and discipline, however, constitutes a legitimate goal of the correctional institution. *Id.* at 532. In the instant case, there was not only a concern regarding assaults on staff in general, but Dirton himself has a personal history of assaulting staff and using abusive language when he is not given what he demands. ECF 18 at Ex. 9, pp. 2, 13, and 25; Ex. 9A, pp. 2, 5- 6. Because there was a legitimate security concern in Dirton's case, he has failed to

establish a prima facie case of retaliation and Defendants are entitled to summary judgment in their favor on this claim.

## Medical Claims

Defendants assert that Dirton's Eighth Amendment rights were not violated with respect to treatment for a serious medical need.[3]  ECF 18.  The only allegation in the Complaint regarding a denial of medical care is Dirton's claim that he was not provided medical care in the aftermath of the alleged assault during which he suffered a seizure.  ECF 1.  All of the Defendants in this case are correctional staff, none of whom are responsible for the delivery of medical care or the supervision of those who do.  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

There is ample evidence in the record that Dirton receives treatment for his seizure disorder on a regular basis.  It is also clear, however, that Dirton himself does not follow medical directives in terms of taking medication designed to reduce seizure activity and wearing the protective helmet to guard against injury when a seizure occurs.  ECF 18 at Ex.8, p. 23 (superficial lacerations to head due to no helmet during seizure), pp. 31 and 33 (refusal to allow lab tests to determine therapeutic levels of anti-seizure medication), p. 38 (apparent feigning seizure symptoms), p. 49 ("labs reveal undetectable" anticonvulsant medication "for second time despite report from pharmacy staff that he received medication."), and p. 53 (admits he does not

---

[3]  There is no evidence that Dirton's front-cuffing medical order or that his 2400 calorie diet were medical orders issued to treat a serious medical need.  To the extent they were, however, the isolated incidents alleged in the Complaint simply is not enough to establish deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

take Neurontin properly because it is crushed and he doesn't trust that's what he is receiving). Additionally, there is evidence that Dirton does not notify security staff about the seizures he experiences. *Id.* at Ex. 8, p. 15.  There is simply no evidence that any of the Defendants have interfered with a prescribed course of care or denied Dirton access to required medical care. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).  Thus, to the extent a claim of deliberate indifference to a serious medical need was raised, Defendants are entitled to summary judgment in their favor on the claim.

A separate Order follows.

June 3, 2014
Date

*Rel D. Bent*
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE